IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| D'ANDRE SATCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-093 |
| | ) | |
| ANDREW McFARLANE, Warden of | ) | |
| Telfair State Prison, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, an inmate at Smith State Prison, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983 that concerns events alleged to have occurred at Telfair State Prison ("TSP") in Helena, Georgia. Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.      **Screening the Complaint**

        A.      **Background**

        Plaintiff names Andrew McFarlane, TSP Warden, as the sole Defendant. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

        On September 11, 2023, a fellow TSP inmate stabbed Plaintiff, and other inmates tried to help stop the bleeding because there was no one in the control booth to offer help. (Id. at

5.)  By the time the door to the dormitory opened for dinner, Plaintiff "was in a lot of pain and lost a lot of blood." (Id.)  On the way to dinner, Plaintiff advised Unit Manager Karen Thomas he need medical attention, and she let him through the gate to get to the medical department. (Id.)  On his way to the medical department, Plaintiff walked by Defendant McFarlane and informed the warden of his wounds.  (Id.)

When the prison doctor examined Plaintiff, he determined Plaintiff needed to go to the Dodge County Hospital.  (Id.)  An MRI revealed Plaintiff's left lung had collapsed and had to be drained of blood.  (Id.)  Plaintiff transferred to the trauma center in Macon, Georgia, but his four-day stay in Macon was "cut short due to somebody at the prison in authority harassing the nurses everyday multiple times asking when [Plaintiff] was being discharged."  (Id. at 5-6.)  Upon his return to TSP, Plaintiff was placed in "the hole," and the inmate who stabbed him was not disciplined.  (Id. at 6.)

During the first month Plaintiff spent in the hole, he wore the same bloody clothes he was in when he was stabbed, and he did not have any of his personal property.  (Id.)  Although a correctional officer eventually gave him a clean jump suit, Defendant McFarlane did nothing about the situation when Plaintiff gave him a letter explaining his situation during the warden's inspection.  (Id.)  Other inmates flooded their cells with water and urine that seeped into Plaintiff's cell, but he did not receive chemicals to clean his cell.  (Id.)  Plaintiff was unfairly sanctioned by having to stay in the hole because he had limited commissary accessibility, visitation, and phone privileges.  (Id.)  Plaintiff seeks unspecified injunctive and monetary relief.  (Id. at 7.)

As to pursuing administrative remedies, Plaintiff acknowledges TSP has a grievance procedure.  (Id. at 3.)  Although Plaintiff filed grievances about his claims, he never received

a response.  (Id. at 3, 6.)  Plaintiff never filed any appeal, even though time expired for a response to his original grievances.  (Id. at 4.)

### B.   Discussion

#### 1.   Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555,

557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w]

that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding

them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S.

89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, this liberal construction

does not mean that the Court has a duty to re-write the complaint.  See Bilal v. Geo Care, LLC,

981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.    Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Because He Did Not Exhaust Administrative Remedies

#### a.    The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison or other correctional facility until

such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Dismissal

for failure to state a claim is appropriate if it is clear from the face of a complaint that the

plaintiff failed to exhaust administrative remedies.  See Jones v. Bock, 549 U.S. 199, 215

(2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v.

Fed. Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261

F. App'x 254, 256 (11th Cir. 2008) (*per curiam*).  The PLRA's mandatory exhaustion

requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."

Porter v. Nussle, 534 U.S. 516, 520 (2002).

Moreover, the Court does not have discretion to waive the requirement, even if it can

be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x

81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir.

4

1998).  Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'"  Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson, 418 F.3d at 1159; see also McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (per curiam) ("The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." (citation omitted)).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process before initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (per curiam); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Porter, 534 U.S. at 524.

### b.      Administrative Grievance Procedure

The administrative grievance procedure is governed by the version of the Georgia Department of Corrections ("DOC") Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1]  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.  Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  Id.  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  Id.  § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.  Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this

---

[1]DOC policies cited herein are publicly available on the DOC web site.   See https://gdc.georgia.gov; *select* "About GDC" Menu option; *follow* link for Policies & Procedures; *select* Facilities Division Policies; *click on* link for desired PN (last visited Apr. 2, 2024).

time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § (C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### c.        Plaintiff's Failure to Exhaust

In his complaint, dated October 27, 2023, Plaintiff states he filed a grievance(s) about his claims but never received a response.  (Doc. no. 1, pp. 3, 6, 7.)  Plaintiff also concedes that he never filed an appeal, even though the time had expired for a response to his original grievance(s).  (Id. at 4.)  Thus, the face of Plaintiff's complaint makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit because he did not file an appeal.  That is, Plaintiff improperly bypassed the appeals process when he chose not to file a central office appeal when he did not receive a response from the Warden in the allotted forty-day window.

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on

time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds.  We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not filing an appeal would defeat the aims of PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159.  The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances.  Id.  Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261.  It is plain from the face of Plaintiff's complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not file a central office appeal once the time for the Warden's response expired.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the complaint fails to state a claim upon which relief can be granted.  See Solliday,

413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

## II.      Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of April, 2024, at Augusta, Georgia.

_____

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
